UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DIAMOND TUCKER, REDEMPTION LLC,
and WESTFAIR, LLC,

                                        Plaintiffs,

    vs.                                                              1:25-CV-1204
                                                                    (MAD/DJS)
KAREN PUPOVIC and ISMET PUPOVIC,

                                        Defendants.

_____

APPEARANCES:                                OF COUNSEL:

RODERICK D. WOODS, P.C.              RODERICK DAVID WOODS, ESQ.
880 Third Avenue - 5th Floor
New York, New York 10022
Attorney for Plaintiffs

REISMAN, RUBEO LAW FIRM          MARK IRWIN REISMAN, ESQ.
151 Broadway                                  MARK A. RUBEO, ESQ.
Hawthorne, New York 10532
Attorneys for Defendants

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

Plaintiffs Diamond Tucker St. Property, LLC ("Diamond Tucker"), Redemption, LLC,

and Westfair, LLC, initiated this action, through counsel, on September 2, 2025, by filing a

complaint against Defendants Karen Pupovic and Ismet Pupovic ("Defendants" or the

"Pupovics").  *See* Dkt. No. 1.  According to Plaintiffs, they "are foreign limited liability

companies whose members are domiciled outside New York and whose connective tissue to this

case is that they are victims of the scheme perpetrated by the Defendants." *Id.* at 7, ¶ 5.  They

1

allege that the Pupovics are "New York resident[s] and citizen[s]." *Id.* at ¶¶ 6-7.  Plaintiffs bring two claims—one for "Prima Facie Tort" pursuant to New York law and one under the Declaratory Judgment Act, 28 U.S.C. § 2201—related to a real estate transaction that fell through between the parties.  *See generally* Dkt. No. 1.

Presently before the Court is Defendants' motion to dismiss the complaint and to impose sanctions, *see* Dkt. No. 24; Plaintiffs' cross-motion to transfer the case and amend the complaint and response in opposition, *see* Dkt. No. 36; and Plaintiff's replies, *see* Dkt. Nos. 39, 40. Plaintiffs' attorney also hired independent counsel who opposed the motion for sanctions on his behalf.  *See* Dkt. Nos. 34, 35, 41.

For the reasons that follow, Defendants' motion to dismiss is granted.

## II. BACKGROUND

To begin their complaint, Plaintiffs make statements without context and without paragraph numbers.  *See* Dkt. No. 1 at 1-6.  Plaintiffs allege that they "are in dire and desperate need of equitable relief from this Court from the egregious litigation misdeeds and frauds perpetrated upon the Court by Defendants, and which have resulted in Defendants' recording of a fraudulent lien against Plaintiffs' property."  *Id.* at 1.  They "bring this action as their *sixth separate independent* action to obtain equitable relief only from litigation and transactional misconduct engaged in by Defendants against Plaintiffs in the Superior Court of Connecticut." *Id.* (emphasis added) (footnote omitted).  From Plaintiffs' perspective, "[u]nfortunately, and which has not been challenged by any prior Court to date, the Courts in the state of Connecticut have 'ratified, acquiesced in, or left unpunished' Defendants' heinous actions[.]"  *Id.* at 3 (footnote omitted).  Plaintiffs allege that a state court judgment lien obtained by Defendants over Plaintiffs' property was obtained through perjury and fraud.  *See id.* at 5-6.

As "Appendix A" to their complaint, Plaintiffs provide the Court with a "History of Lawsuits between Plaintiff and Defendants." Dkt. No. 1 at 13-16. Plaintiffs explain that "[o]n or about January 28, 2022, Defendants, Karen and Ismet Pupovic, entered into a contract with Diamond Tucker St. Property, LLC . . . to purchase the property located at 101 Northwood Drive, Easton, Connecticut (the "Property") for $910,000.00." *Id.* at 13, ¶ 2. Plaintiffs do not provide any further context to this transaction between the parties.

Defendants provide a declaration from Ismet Pupovic, which he signed under the penalty of perjury. *See* Dkt. No. 24-1.[1] Mr. Ismet declares that he and his wife, Defendant Karen Pupovic, signed a contract with Diamond Tucker in early 2022 for the purchase of the Property, which is a single-family residence. *See id.* at ¶ 5. The Pupovics made a $90,000 down payment. *See id.* Mr. Ismet explains that "[i]n preparation for the closing, [their] Connecticut real estate attorney attempted to obtain [Diamond Tucker's] Federal Employer Identification Number ("EIN"). . . ." *Id.* at ¶ 6. "Upon information and belief, [Diamond Tucker] and/or its attorney repeatedly refused to provide the EIN, and also refused to provide other documents necessary to complete [the] purchase of the Pr[operty] and the recording of the deed." *Id.* at ¶ 7. The Pupovics "were advised not to proceed with the closing and did not do so." *Id.* "[O]n or about March 15, 2022, [the Pupovics'] attorney sent a letter to [Diamond Tucker's] attorney advising her that the contract was terminated and demanded the return of [the] $90,000 contract downpayment." *Id.* Mr. Ismet states that all three Plaintiff LLCs are owned by Sean Fillinich, and that the Property was transferred from Plaintiff Diamond Tucker to Plaintiff Redemption, and then to Plaintiff

---

[1] "[T]he Court may consider materials outside the pleadings in deciding a motion to dismiss for improper venue." *Che v. Edlow*, No. 1:24-CV-2793, 2025 WL 2695283, *2 (S.D.N.Y. Sept. 22, 2025) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)); *see also Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 287 (E.D.N.Y. 2013).

Westfair. *See id.* at ¶¶ 11-12.  The Pupovics both declare in separate affirmations that they have lived in Cortlandt Manor, New York, since July 9, 2023.  *See* Dkt. No. 24-3 at 3, 6.

Plaintiffs allege that Diamond Tucker filed a lawsuit against the Pupovics in the District of Connecticut on March 22, 2022, for breach of contract.  *See* Dkt. No. 2 at ¶ 3.  Diamond Tucker voluntarily withdrew that lawsuit in April of 2022.  *See id.* at ¶ 5; *see also Diamond Tucker St Property LLC v. Pupovic*, No. 3:22-CV-00422 (D. Ct. filed Mar. 23, 2022).  On June 30, 2022, the Pupovics filed an action in Connecticut state court "claiming to have prevailed in the action, and claiming damages [for] vexatious litigation, abuse of process, and [claims] under [the Connecticut Unfair Trade Practices Act]."  Dkt. No. 1 at 13-14, ¶ 6.  Diamond Tucker removed that action to the District of Connecticut which "was dismissed on the merits in favor of Plaintiffs by the Court on March 7, 2025, pursuant to Fed. R. Civ. P. 41(b)."  *Id.* at 14, ¶ 7; *see also Pupovic v. Woods*, No. 3:24-CV-1732 (D. Ct. filed Oct. 30, 2024).  On November 23, 2023, the Pupovics initiated another state court action.  *See* Dkt. No. 1 at 14, ¶ 8.  Diamond Tucker again removed the case to the District of Connecticut.  *See Pupovic v. Diamond Tucker St. Property, LLC*, 3:24-CV-1969 (D. Ct. removed Dec. 12, 2024).

According to Plaintiffs, the Pupovics then "recorded a *lis pendens* . . . alleging 'fraudulent conveyance.'"  Dkt. No. 1 at 14, ¶ 10.  Plaintiffs filed two lawsuits "to discharge such improper (and invalid for service defects) *lis pendens* . . . ."  *Id.* at ¶ 11.  The state court dismissed those actions because Diamond Tucker "did not have standing to discharge the *lis pendens*," "Plaintiff Westfair, LLC did not exist because Defendants could not identify its state of organization or incorporation after having checked state records in Connecticut and Maryland, finding no such entity," and "Plaintiffs were 'fictitious' entities without standing in Connecticut for purposes of

4

applying to discharge the *lis pendens*, but not for purposes of having *lis pendens* recorded against them."  *Id.* at 14-15, ¶ 12.

Defendants provided a copy of the Connecticut state court judgment which awarded them compensatory damages in the amount of $628,411.75 and legal fees in the amount of $45,000.  *See* Dkt. No. 24-5 at 2-3.  The judgment was entered on June 21, 2024.  *See id.*

On August 2, 2024, Plaintiffs filed suit in Southern District of New York.  *See* Dkt. No. 2 at 15, ¶ 14; *see also Westfair v. Pupovic*, No. 7:24-CV-5879 (S.D.N.Y. filed Aug. 2, 2024).  "In late 2024," the Pupovics filed a judgment lien.  Dkt. No. 1 at ¶ 15.  They also filed an action in Connecticut state court to foreclose on that lien.  *See id.* at ¶ 16.  Plaintiffs removed that action to the District of Connecticut.  *See id.*; *see also Pupovic v. Diamond Tucker St. Property, LLC*, No. 3:25-CV-81 (D. Ct. removed Jan. 15, 2025).  "In or about November 2024, . . . Diamond Tucker . . . refiled the identical Pupovic Breach of Contract Action which they had previously voluntarily dismissed in the United States District Court for the Southern District of New York . . . ."  Dkt. No. 1 at ¶ 17; *see also Diamond Tucker St. Property, LLC v. Pupovic*, No. 7:24-CV-8373 (S.D.N.Y. filed November 3, 2024).  Diamond Tucker then brought another action in the Southern District of New York in August of 2025.  *See* Dkt. No. 1 at ¶ 18; *see also Diamond Tucker St. Property, LLC v. Pupovic*, No. 7:25-CV-6336 (S.D.N.Y. filed Aug. 1, 2025).  Additionally, "[i]n or about August 2025, [Diamond Tucker] brought an action for equitable relief [] in the Supreme Court of the State of New York, County of Ulster . . . ."  Dkt. No. 1 at 16, ¶ 19.

On May 16, 2025, the District of Connecticut remanded one of the cases back to state court, concluding that the federal court lacked jurisdiction to hear the issues under the *Rooker-Feldman* doctrine.[2]  *See Pupovic*, 3:24-CV-01969,  Dkt. No. 38.

On November 6, 2025, Plaintiffs filed a motion to transfer their cases to Multidistrict Litigation pursuant to 28 U.S.C. 1407.  *See In re: Diamond Tucker St. Property, LLC Litigation*, MDL 3173, SC/2:25-CV-13006.  The Multidistrict Litigation Panel denied the request on February 4, 2026, stating as follows:

> Despite the commonalities among the actions, centralization is not warranted for several reasons.  First, and most significantly, the actions share overlapping questions of fact and have multidistrict character only because *movants have deliberately filed duplicative actions in multiple districts*.  All of the Pupovic actions were brought, or removed to federal court, by movants (or their sole member, Mr. Fillinich) and seek essentially the same relief— namely, that the Connecticut state court judgment and judgment lien obtained by the Pupovics be vacated. . . .
>
> Given the myriad redundancies in [Diamond Tucker's] Property's claims in the Pupovic actions, resolution of one may lead to prompt resolution of the others.

*Id.*, Dkt. No. 21 at 2 (emphasis added).

On February 3, 2026, the District of Connecticut denied Diamond Tucker's motion for reconsideration of the decision remanding the case to state court.  *See Pupovic*, 3:25-CV-81, Dkt. No. 36.  The court held that it "lacks subject-matter jurisdiction to review the underlying state court action under the *Rooker-Feldman* doctrine and thus the case must be remanded on those grounds."  *Id.*, Dkt. No. 30 at 5.  On February 11, 2026, the District of Connecticut dismissed

---

[2] "The *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Amelio v. Quicken Loans*, No. 24-1619, 2026 WL 1876070, *2 (2d Cir. June 30, 2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

another one of the actions for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See Diamond Tucker*, 3:25-CV-2036, Dkt. No. 17. On April 16, 2026, the District of Maryland transferred a case that was filed by Diamond Tucker's owner, Mr. Fillinich, to the Southern District of New York. *See Fillinich v. Pupovic*, 8:25-CV-03512 (D. Md), Dkt. No. 23.

Attorney Roderick David Woods is listed as at least one of Plaintiffs' attorneys in all of the actions filed in various courts, except for the one filed *pro se* in Maryland by Plaintiffs' owner.

### III. DISCUSSION

Defendants argue the case must be dismissed because the Northern District of New York is an improper venue; the Court lacks subject matter jurisdiction over the claims; Plaintiffs have failed to state any claims; the complaint is barred by res judicata; Plaintiffs Redemption and Westfair lack standing; the state court actions initiated by Defendants were proper; and the principle of comity applies. *See* Dkt. No. 24-24. Defendants also move to impose sanctions on Plaintiffs' counsel. *See id.* at 30-33.

Plaintiffs oppose every single argument raised by Defendants and argue in the alternative that the case should be transferred to the District of Connecticut. *See* Dkt. No. 36. Plaintiffs' attorney's independent legal counsel filed an opposition to the motion for sanctions. *See* Dkt. No. 41.

The Court declines to address all the arguments presented by Defendants in their motion to dismiss because this case requires dismissal for one of the simplest reasons: this is an improper venue for the case to have been brought.[3]

---

[3] The Court notes that it is permissible and advisable for a court to address venue before addressing subject matter jurisdiction or the merits of a case. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007); *Budinski v. Massachusetts*, 758 F. Supp. 3d 158, 160 (W.D.N.Y. 2024); *Emiabata v. Farmers Ins. Corp.*, 848 Fed. Appx. 27, 29 (2d Cir. 2021) (summary order).

Venue in federal civil cases is governed by 28 U.S.C. § 1391(b), which provides as follows:

> A civil action may be brought in--
>
> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).

Defendants argue "the only proper venues would be the [Southern District of New York], where the Defendants reside, or the D[istrict of Connecticut], where the purported wrongs occurred." Dkt. No. 24-24 at 17.  Defendants rely on their home address "in Cortlandt Manor, in Westchester County, within the Southern District of New York." *Id.* at 7.

"Because venue is challenged, Plaintiff bears the burden of proving that venue is proper in the chosen forum." *Schomann Int'l Corp. v. N. Wireless, Ltd.*, 35 F. Supp. 2d 205, 212 (N.D.N.Y. 1999); *see also Eddi v. Antebi*, No. 24-CV-520, 2026 WL 880263, *14 (S.D.N.Y. Mar. 31, 2026) (quoting *Catlin Indem. Co. v. New England Law/Boston*, No. 15-CV-4836, 2016 WL 447849, *2 (S.D.N.Y. Feb. 4, 2016)).

Plaintiffs argue venue is proper in this District.  *See* Dkt. No. 36 at 10.  In reciting the standard under 28 U.S.C. § 1391(b) in their filing, Plaintiffs bold and italicize (b)(2)—that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to

8

the claim occurred."  Dkt. No. 36 at 10 (emphasis omitted).  They argue that (1) "[i]t is undisputed that Defendants are New York domiciliaries 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located'" and (2) "Defendants, repeatedly and in assorted Court filings, as well as in filings in the Easton, Connecticut land records, asserted their address to be 3979 State Route 52, Pine Bush, New York 12566."  *Id.* at 11-12 (citation omitted).  That address is in Ulster County, New York, which is a part of the Northern District of New York.  *See* 28 U.S.C. § 112(a).  Plaintiffs argue that "[b]ased on these documents filed at various junctures, including after the dates Defendants allegedly moved to Cortlandt, New York, there is a colorable claim for venue in the Northern District of  New York."  Dkt. No. 36 at 12.

Plaintiffs' assertions are irrelevant.  Venue is appropriate in three places.  One, in "a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located[.]"  28 U.S.C. § 1391(b)(1).  It is undisputed that, at the time the complaint was filed, Defendants resided in Cortlandt, New York, which is in Westchester County and the Southern District of New York.  *See* Dkt. No. 36 at 12; Dkt. No. 24-3 at 3, 6; 28 U.S.C. § 112(b). Therefore, this District is not the proper venue under subsection (b)(1).  Two, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"  28 U.S.C. § 1391(b)(2).  It is undisputed that the Property at issue in this case is located in Connecticut.  *See* Dkt. No. 1 at 13, ¶ 2.  Neither party presents a single event or omission related to this case that occurred in this District; therefore, venue is improper under subsection (b)(2).  Three, "if there is no district in which an action may otherwise be brought as provided in this section, [venue is proper in] any judicial district in which any defendant is subject to the court's personal jurisdiction

9

with respect to such action." 28 U.S.C. § 1391(b)(3).  This action could have been brought where

Defendants reside—the Southern District of New York—or where the "property that is the subject

of the action is situated"—Connecticut.  28 U.S.C. § 1391(b)(2).  Therefore, the Court need not

turn to subsection (b)(3) to determine if this District is proper.  Rather, it is quite obvious that

venue in the Northern District of New York is improper.[4]

Plaintiffs state that "Defendants move to dismiss this case under Fed. R. Civ. P. 12(b)(3)

asserting that venue is improper in the Northern District of New York.  Plaintiffs, respectfully,

disagree, and assert: (a) that venue *is* proper in the Northern District of New York . . . ."  Dkt. No.

36 at 10.  They rely entirely on Defendants' previous address which was in the Northern District

of New York.  However, they provide zero legal support for the argument that because

Defendants once lived in the Northern District of New York, venue is currently proper in this

District.  *See id.* at 12.  Plaintiffs are incorrect and venue is improper in this District.

The Court must then decide whether to dismiss or transfer the case.  Pursuant to 28 U.S.C.

§ 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division

or district *shall dismiss*, or if it be in the interest of justice, transfer such case to any district or

division in which it could have been brought."  28 U.S.C. § 1406(a) (emphasis added).

Defendants ask for dismissal and Plaintiffs advocate for transfer.  The Court chooses the former.

"Because '[c]ourts enjoy considerable discretion in deciding whether to transfer a case in

the interest of justice,' . . . '[w]hether dismissal or transfer is appropriate lies within the sound

discretion of the district court.'"  *Doe 2 v. Congregation of the Sacred Hearts of Jesus & Mary*,

No. 24-2940, 2026 WL 239045 (2d Cir. Jan. 29, 2026) (summary order) (quoting *Daniel v. Am.*

---

[4] This conclusion is so obvious, in fact, that the law firm hired to represent Plaintiffs' counsel
contends in its opposition to Defendants' sanctions request, that Plaintiffs' attorney "conceded the
venue issue . . . ."  Dkt. No. 41 at 3, 6.

*Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).  "Factors counseling in favor of transfer include 'a finding that a new action filed by the litigant would be barred as untimely,' 'a finding that the original action was filed in good faith,' and the parties' 'agreement that transfer would be desirable.'"  *Id.* (quoting *Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009)).  "Considerations counseling against transfer include whether the plaintiff is engaged in forum shopping and whether a transfer would 'reward plaintiffs for their lack of diligence in choosing a proper forum.'"  *Id.* (quoting *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394-95 (2d Cir. 1992)).

First, most confusing to the Court is Plaintiffs' counsel's emphasis on subsection (b)(2) of the venue statute concerning the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(b)(2); *see* Dkt. No. 36 at 10.  Counsel does not argue that *any* of the events giving rise to Plaintiffs' case occurred in this District.  Rather, counsel focused on Defendants' residence that was listed in prior state court filings.  *See id.* at 12.  Specifically, Plaintiffs attached documents to their response which show the Pupovics' address as being the Pine Bush address in Ulster County on June 21, 2022; November 20, 2023; September 9, 2024; and October 1, 2024.  *See* Dkt. Nos. 36-1, 36-2, 36-3 at 11, 36-4 at 1.  Plaintiffs filed this action on September 2, 2025.  *See* Dkt. No. 1.  When determining venue, the relevant district to consider is plaintiff's residence at the time the complaint was filed."  *Liu v. Mayorkas*, No. 24-CV-7317, 2025 WL 1707617, *2 (E.D.N.Y. June 18, 2025) (citing *Golberg v. United States*, No. 13-CV-7353, 2015 WL 5638008, *3 (E.D.N.Y. June 4, 2015)); *see also Square One Choices Inc. v. Ditec Sols. LLC*, No. 22-CV-7680, 2023 WL 5277869, *6 (S.D.N.Y. Aug. 16, 2023).  The Court is unaware of any statute or case which supports a leap between Defendants' prior home address from 2022, 2023, and 2024, and venue

11

being proper in this District as of the date the complaint was filed, which was on September 2, 2025.

To be sure, one could argue that Plaintiffs' counsel did not know that Defendants moved to an address located in the Southern District of New York in 2023. However, as Defendants point out in their reply, Plaintiffs' counsel does *not* state that he believed Defendants still lived in the Northern District of New York. *See* Dkt. No. 39 at 10. Rather, Plaintiffs' counsel simply notes that in past court filings, Defendants listed their address as being in the Northern District of New York. *See* Dkt. No. 36 at 12. Counsel's attempt to turn a blind eye to what he knew about Defendants' current residence is disingenuous.

Plaintiffs' attorney's knowledge of Defendants' new address is evident. In this case, the summonses were returned as executed at the Cortlandt Manor address on November 4, 2025. *See* Dkt. Nos. 5, 6. Counsel tried to ignore the reality of Defendants' Cortlandt Manor address by drafting the summonses to be served on Defendants at their previous Pine Bush address. *See* Dkt. No. 2. Counsel filed those with the Court on September 2, 2025. *See id.* However, on October 29, 2024, summonses were returned as executed on the Pupovics in one of the Southern District of New York cases as the Cortlandt Manor address. *See Westfair LLC v. Pupovic*, 7:24-CV-05879 (S.D.N.Y.), Dkt. Nos. 10, 11. Further, and most problematic for counsel's efforts in this case, he himself requested issuance of summonses on August 4, 2025, in another one of the Southern District of New York cases at the Cortlandt Manor address. *See Diamond Tucker St. Property, LLC v. Pupovic*, 7:25-CV-6336 (S.D.N.Y.), Dkt. Nos. 4, 5.

Counsel's deliberate choice to list Defendants' address as being in the Southern District of New York in August of 2025 and then in the Northern District of New York in September of 2025 is the textbook definition of forum shopping. Plaintiffs' attorney chose to list Defendants'

residence at an address that was within the District in which he wanted to file the action. The Court agrees with Defendants that Plaintiffs have been unsuccessful thus far in the District of Connecticut, Southern District of New York, District of Maryland, Connecticut state courts, and the Multidistrict litigation panel. *See* Dkt. No. 24-24 at 15 (commenting on Plaintiffs having "gone from forum to forum, apparently searching for a court that will grant them" their sought-after relief).

The Court finds that transfer instead of dismissal would be futile and a waste of judicial resources. Two federal judges in three cases have already concluded that Plaintiffs' case is barred by the *Rooker-Feldman* doctrine. *See Diamond Tucker*, No. 3:25-CV-2036, Dkt. No. 17; *Pupovic*, No. 3:25-CV-81, Dkt. No. 30; *Pupovic*, 3:24-CV-1969, Dkt. No. 38. Every single one of Plaintiffs' cases—which by Plaintiffs' own count, totals nineteen cases, *see* Dkt. No. 36 at 8— concern a single failed real estate transaction. The Court sees no reason why this case should continue when there are at least eighteen others about the exact same thing. Transferring this case would not serve the interests of justice. Accordingly, the Court will dismiss this action for improper venue pursuant to 28 U.S.C. § 1406(a).

Finally, Defendants ask that the Court impose sanctions on Plaintiffs' attorney. *See* Dkt. No. 24-24. The Court declines to do so.

"As the Second Circuit has explained, Rule 11 'provides a vehicle for sanctioning an attorney, a client, or both.'" *Serenity Alpha, LLC v. Northway Mining, LLC*, 531 F. Supp. 3d 512, 520–21 (N.D.N.Y. 2021) (quoting *United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 948 F.2d 1338, 1343 (2d Cir. 1991)). "In accordance with principles of due process and Rule 11 itself, the subject of a sanctions motion 'must receive specific notice of the conduct alleged to be sanctionable and the standard by which the conduct

will be assessed, and an opportunity to be heard on that matter.'" *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 310 (2d Cir. 2014) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997)); *see also* FED. R. CIV. P. 11(c). "'Only conduct explicitly referred to in the instrument providing notice is sanctionable.'" *StreetEasy*, 752 F.3d at 310 (citation omitted). Rule 11 also states that "[a] motion for sanctions must be made separately from any other motion . . . ." FED. R. CIV. P. 11(c)(2).

Here, Defendants' motion for sanctions was made in conjunction with their motion to dismiss and motion for sanctions pursuant to 28 U.S.C. § 1927. *See* Dkt. No. 24-24; s*ee also Yes I Can Licensed Behav. Analyst PLLC v. Green Tree Cap. LLC*, No. 24-CV-7360, 2025 WL 3715243, *13 (S.D.N.Y. Dec. 23, 2025) ("Because defendants made their Rule 11 motion in the same filing as their motion for § 1927 sanctions, . . . they violated the separate-filing rule. Accordingly, their motion for Rule 11 sanctions is denied"). Likewise, although Defendants asked the Court for permission to file a motion to dismiss and a motion for sanctions, *see* Dkt. No. 9, they did not "describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2). As such, the Court declines to impose Rule 11 sanctions.

As to Defendants' request for the imposition of sanctions under 28 U.S.C. § 1927, *see* Dkt. No. 24-24 at 30, "even if Rule 11 sanctions are not available, the Court may still impose sanctions pursuant to Section 1927 or its inherent power," *Nat'l Convenience Distributors, LLC v. Mountain Candy & Cigar Co.*, No. 25-CV-00259, 2026 WL 862105, *10 (S.D.N.Y. Mar. 27, 2026) (collecting cases). Section 1927 states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The language of § 1927 limits the court's sanction power to attorney's actions which multiply the

14

proceedings in the case before the court.  Section 1927 does not reach conduct that cannot be construed as part of the proceedings before the court issuing § 1927 sanctions." *Green Tree Cap.*, 2025 WL 3715243, at *13 (quoting *Boyd v. Wells Fargo Bank, N.A.*, No. 19-CV-4323, 2021 WL 1812660, *9 (E.D.N.Y. May 6, 2021)) (quotation marks omitted).  Plaintiffs' and their attorney's conduct did not multiply any proceedings in *this* Court.  Therefore, the Court will not impose § 1927 sanctions.

Insofar as the Court can impose sanctions under its inherent power, the Court declines to do so.  This Court has now disposed of only one of nearly twenty actions that have existed between the parties regarding a singular real estate transaction that took place four years ago.  At this time, the undersigned is not the best-suited decision maker regarding sanctions.  Rather, one of the Courts that has dealt with multiple redundant and vexatious filings, such as the Southern District of New York or District of Connecticut, would be better suited to determine the appropriateness of sanctions.

### IV. CONCLUSION

Upon careful consideration of the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein the Court hereby

**ORDERS** the Defendants' motion to dismiss (Dkt. No. 24) is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for sanctions (Dkt. No. 24) is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' cross-motion to transfer and for leave to amend (Dkt. No. 36) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**; and the Court further

15

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  July 17, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge